Jeremy J. Gugino
Chapter 7 Bankruptcy Trustee
410 S Orchard St.
Suite 144
Boise, ID  83705
(208) 342-1590
gugino@cableone.net

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re: | CHAPTER 7 |
| BLACKBURN, RANDALL WADE<br>BLACKBURN, LISA ANN | CASE NO.  10-01532-TLM |
| | **MEMORANDUM** |
| Debtor(s) | |

COMES NOW the Trustee, **Jeremy J. Gugino**, in the above-entitled matter and offers the following memorandum in support of his Motion for turnover of any unspent and unauthorized retainer(s) held by The Law Offices of D. Blair Clark, PLLC ("the "Firm") as of the date of filing of the instant bankruptcy case.

## FACTS

The following facts are gleaned from the public record in the instant case, Case No. 09-03779-TLM, as well as comments made by Randall and Lisa Blackburn ("Debtors") and Jeffrey Kaufman ("Counsel") at the Debtors' § 341 meeting of creditors.  To the extent a fact is asserted without citation to a source, Trustee will attempt to establish said facts at hearing scheduled for 8/23/10.

## CHAPTER 7 CASE – 10-01532-TLM

On or around 5/5/10, Debtors granted a security interest in a 1992 Pacer Strike King Boat and a Coachman Travel Trailer to Charles and Doris Blackburn in exchange for $7,500.00.  Doc.

MEMORANDUM  10-01532 TLM

No. 21 at St. of Fin. Affairs, q. 10. It is unclear from a review of Debtors' bank statements when they received the $7,500.00, in what form the money came in (cash or check), or whether they deposited the money into any of their bank accounts, however, Debtors transferred $7,500.00 to the Firm on or around 5/18/2010. *Id*. at q. 9. The Firm deposited the $7,500.00 into its trust account on 5/18/10. Of the $7,500.00 transferred to the Firm, $1,799.00 was applied as a flat fee for the Debtors' chapter 7 filing ($1,500.00) and the filing fee ($299.00) for the case, leaving a balance of $5,701.00. *Id*.; Doc. No. 4 (indicating a $1,500.00 flat fee for the case). Debtors' attorney compensation disclosure statement did not indicate that any other funds would be paid to the Firm by the Debtors in the case, that the Firm held a retainer of any kind or that it had a lien in same, or that it had received funds from other law firms. Debtors filed a voluntary chapter 7 petition the very next day, 5/19/10 at 7:30 p.m. Doc. No. 1.

Debtors disclosed in their statement of financial affairs, question 9, that they had transferred "$4,700.00 From Himberger Law Offices" to the Firm on 2/11/10 but did not disclose what this money represented or why it was paid. They also disclosed that they had transferred "$7,500.00" to the Firm the day before filing, again with no further explanation. As noted, *supra*, none of these sums were disclosed in the Firm's Fed. R. Bankr. P. 2016 disclosure statement. In fact, the word "retainer" does not appear in any of the Debtors' sworn petition, schedules or statement of financial affairs, or in the Firms' Rule 2016(b) disclosure statement.

**<u>CHAPTER 13 CASE – 09-03779-TLM</u>**

Prior to filing the Chapter 7 case, Debtors filed a voluntary Chapter 13 petition on 11/30/09. Case No, 09-03779-TLM, Doc. No. 1. Debtors originally retained Richard Himberger ("Himberger") as their attorney in the case. Himberger filed a Fed. R. Bankr. P. 2016 disclosure of compensation on 12/3/09 indicating that he had received $7,037.00 from Debtors

prior to the filing.[1] Doc. No. 7. The disclosure also indicated that Himberger had been, or would be, paid at an hourly rate of $180/hour. *Id*. Himberger also indicated that he had "not agreed to share the [$7037.00] with any other person" other than members or associates of his law firm. *Id*. In exchange for the above described compensation, Himberger agreed to analyze the Debtors' financial situation, render advice to the Debtors in determining whether to file for bankruptcy and to represent the Debtors at their § 341 meeting of creditors, confirmation hearing, "and any adjourned hearings thereof[.]" Debtors filed a Chapter 13 plan on 12/29/09. Doc. No. 24. Under § 3.3 of the plan, entitled "Attorney," Himberger did not check either one of the boxes to described how he would be paid in the case, whether he would receive payments for his fees through the plan or whether he had charged a flat fee. *Id*.

On 1/29/10, Jeffrey Kaufman ("Kaufman") filed a "Substitution of Attorney" pleading indicating that the Firm had substituted as attorney in the Chapter 13 case for Himberger. Doc. No. 31. Following a motion to dismiss the case by the Chapter 13 trustee on 3/3/10, Doc. No. 35, Debtors filed an amended Chapter 13 plan on 3/12/10. Doc. No. 40. Under § 3.3 of the amended plan entitled "Attorney," Debtors checked the box indicating that attorneys fees and costs would be awarded to the Firm " in an amount to be proven and allowed by the court" which would be "in addition to the fee retainer paid pre-petition ($4,700) and any sums allowed in any previous order(s)." Debtors specifically did not check the box under § 3.3 indicating they had received a flat fee pursuant to the local Model Retention Agreement. *Id*. On 4/14/10, the chapter 13 trustee filed a recommendation that the amended plan not be confirmed. Doc. No. 51. Among the "MATTERS AT ISSUE" noted in the pleading was the fact that "Counsel for the Debtors will need to file a 2016b." *Id*. ¶ 3. The chapter 13 case was dismissed nine days later on 4/23/10 and the case closed on 6/7/10. Doc. Nos. 53, 56. At no time during the Chapter 13

---

[1] This disclosure does not quite match up with question 9 of the Debtors' Statement of Financial Affairs which

MEMORANDUM 10-01532 TLM

case did Kaufman or the Firm file a Fed. R. Bankr. P. 2016 disclosure statement, nor did the Firm seek approval of any compensation it had received in the case from the Court.

## PRESENT MOTION

Trustee filed a motion for turnover of the above retainers against the Firm pursuant to 11 U.S.C. § 542(a). Doc. Nos. 34, 37 (Collectively, the "Motion"). The parties agreed to settle the present dispute via motion as opposed to adversary proceeding. *See* Fed. R. Bankr. P. 7001(1), (2). In the Firm's response to Trustee's Motion, Doc. No. 35, the Firm revealed for the first time that it had entered into a pre-petition "CHAPTER 7 FEE AGREEMENT" (the "Agreement") with Debtors. *Id.* at 4. Under the Agreement, Debtors gave the Firm $7,500.00, $1,701.00 of which was to be applied to pre-petition fees and the filing fee. The remainder ("Retainer") was to be retained by the Firm to pay for "post-petition fees and costs as incurred, on a monthly basis." *Id.* Debtors further "granted a security interest in and to all balances remaining in [the Firm's] trust account in [Debtors'] name, perfected by possession, and shall have all rights and benefits of a secured creditor under the Idaho Uniform Commercial Code[.]" *Id.* Despite this, Debtors did not list the Firm as a secured creditor in the case. Doc. No. 21 at sched. D. To the best of Trustee's knowledge and belief, Debtors, between 5/18/10 when the Retainer was paid and 5/19/10 when the instant case was file, had not incurred any fees or costs that would have been applied to the Retainer.

## LEGAL AUTHORITY

Section 541(a) of the Bankruptcy Code lays out property of the bankruptcy estate and includes all of the debtor's legal and equitable interests in property. This includes attorney retainers. *See generally In re Dearborn Constr., Inc.*, 03.1 I.B.C.R. 17 (Bankr. D. Idaho 2003) (noting throughout that attorney retainers are property of the estate); 3 Collier on Bankruptcy,

---

indicate they made three payments of $2,500.00 ($7,500.00 total) to Himberger prior to filing.

¶328.02[5] at 328-14 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2010) ("A majority of the courts hold that prepetition retainers constitute property of the estate under section 541 of the Code."). Property of the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Of course a debtor's interest in property is generally governed by applicable state law.

The *Dearborn* Court analyzed the various types of retainers, including so-called "security retainers," which the Court defined as "one held by attorneys to secure payment of fees for future services that the attorneys are expected to render." *Dearborn*, 03.1 I.B.C.R. at 20 (citing Collier, ¶ 328.02[1][c][i] at 328-6 – 328-7) (internal quotations omitted). The *Dearborn* Court went on to note that "security retainers are estate property which can only be used by the professional upon compliance with the entire fee application process including court approval." *Dearborn*, *supra* at 20 (citations and internal quotations omitted). An attorney holding a security retainer is treated as a secured creditor subject to the attorney's claims for payment to the extent the Court allows fees under 11 U.S.C. §§ 330 and 331. *Id.* Once fees and costs are approved by the Court, any unearned portion of the retainer is "property of the estate subject to turn over." *Id*.

As the Ninth Circuit has noted, "the Bankruptcy Code and Federal Rules of Bankruptcy Procedure impose several disclosure requirements on attorneys who seek to represent a debtor and who seek to recover fees." *In re Park-Helena Corp*., 63 F.3d 877, 880 (9th Cir. 1995) (citing 11 U.S.C. § 329; Fed. R. Bankr. P. 2014, 2016). In order to facilitate these disclosure requirements and aid the Court in its policing powers, the disclosure rules "impose upon attorneys an independent responsibility. Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Id*. (citing *In re Film*

*Ventures Int'l, Inc.*, 75 B.R. 250, 252 (9th Cir. BAP 1987)).  The *Dearborn* Court echoed these sentiments, holding:

> The state of the law is clear: anything less than strict compliance with the requirements of the Code and Rules regarding professional disclosure can result in denial of all fees and costs.  There must be full, candid and complete disclosure of all the professional's connections to the debtor and other parties in interest.  Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees.

*Dearborn*, 03.1 I.B.C.R. at 22 (internal citations and quotations omitted).

These rules emanate from the Bankruptcy Code and Rules starting with 11 U.S.C. § 329(a) which states:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

To the extent the compensation exceeds the "reasonable value of any such services," the Court "may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]"  11 U.S.C. § 329(b).

Federal Rule of Bankruptcy Procedure 2016 sets forth the requirements for the above disclosures and states in relevant part:

> (a) Application for Compensation or Reimbursement.  An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.  An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or

> understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.
>
> (b) Disclosure of Compensation Paid or Promised to Attorney for Debtor. <u>Every attorney for a debtor</u>, whether or not the attorney applies for compensation, <u>shall file and transmit to the United States trustee within 14 days after the order for relief</u>, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. <u>A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed</u>.

(emphasis added). This duty to disclose applies to any lien interests an attorney may claim in a retainer paid by the debtor. Again *Dearborn* lays out the rule:

> [t]here is an affirmative duty to disclose, at the time counsel is seeking approval of employment . . . whether a lien position is believed to exist or will be asserted against a retainer or any other property of a debtor. Disclosing only that a retainer exists does not necessarily disclose a possible lien interest or whether such an interest will be asserted. . . . not all retainers are alike and may not give rise to lien interests. An attorney might also waive such an interest if in fact one is created. Therefore, the disclosure regarding a lien interest is in addition to the other required disclosures regarding the existence, nature and terms of any retainer. This disclosure is necessary to allow the Court and interested parties to evaluate the entirety of the relevant facts and circumstances. Failure to meet any of these obligations exposes the professional to consequences which may include reduction or denial of compensation.

*Dearborn*, supra at 23. *See also In re Nelson*, 03.4 I.B.C.R. 209 (Bankr. D. Idaho 2003) (Court orders chapter 12 attorney to turn over undisclosed retainer balance of $2,270.00 to chapter 7 trustee upon conversion due to attorney's failure to disclose lien in the retainer).

**<u>Nature of Retainer</u>**

Based on the "CHAPTER 7 FEE AGREEMENT" as well as the allegations made by the Firm in its response(s) to Trustee's motion for turnover, Trustee believes the Retainer is a security retainer.

**Property of the estate – 11 U.S.C. § 541(a)**

Trustee's first argument in favor of turnover is simple.  As of the date of filing of the Chapter 7 case, Debtors had a $5,701.00 retainer on account with the Firm.  As of that date, the Firm had not completed any work for Debtors and thus had not accrued any fees or costs to apply the retainer to.  Under the fee agreement, the Retainer balance would only be applied to "postpetition fees and costs <u>as incurred</u>."  As such, the extent of the Firm's lien is dependant on the Firm actually accruing fees and costs.  Certainly, Debtors had the right on the date of filing, to terminate its relationship with the Firm and demand a refund of the entire unearned Retainer balance.  In a sense, as of the date of filing, the Firm owed a debt to Debtors in the amount of the unspent retainer, payable upon demand upon termination of the Firm – similar to the relationship of a bank and a depositor.  Since the estate includes all of the legal and equitable interests of the Debtors in property, Trustee had the right to demand the unearned portion of the Retainer from the Firm on the date of filing.[2]  Accordingly, the instant matter can be decided strictly on the Trustee's powers under §§ 541(a), 542(a) and 542(b) (requiring that any entity owing a debt that is property of the estate and which is payable on demand or order must pay the trustee).

**Failures to Comply with Disclosure Rules – Disgorgement**

Trustee has laid out the relevant case law governing attorney disclosures of fees, retainers and liens in same.  The violations of those disclosure rules are rampant in both the Chapter 7 and 13 case and warrant disgorgement.

---

[2] Similar to the bank/depositor relationship, the interest in property would be a chose in action against the Firm for the unearned portion of the Retainer.

MEMORANDUM  10-01532 TLM

For starters, the Court never approved any fees for Himberger or the Firm in the Chapter 13 case. The Firm did not even file a Fed. R. Bankr. P. 2016(b) disclosure statement. The only record of any payment to the firm appears in § 3.3 of the amended plan and the payment is described as a "retainer." The Firm, at Doc. No. 41 of the instant case, alleges that:

> The $4,700.00 sum was received from the prior Chapter 13 counsel, Richard Himberger, which was the balance of a retainer which Debtors had paid to him. Mr. Himberger asserted that he had earned the balance and offset the same. The firm makes no assertion in this present dispute if such was proper or not, but all of this sum was used in the prior Chapter 13 case. An accounting thereof is submitted herewith. The account was paid as funds were available, after the entry of Docket 57. There was still a balance due of $2,892.50, which counsel 'charged off' on counsel's books and is no longer owing.

Based on these assertions, it sounds as if Himberger may have applied a portion of the money he had received prepetition to post-petition services. Once the $4,700.00 balance was transferred to the Firm, it sounds as if the Firm proceeded to do the same thing – pay itself from the retainer as services were rendered. In fact, based on the attached transaction record, the Firm may have applied the $4,700.00 to services it performed before it even received the funds from Himberger on 2/11/10. *See* Doc. No. 41 at 4-6 (note entries starting on 1/12/10). At no time during the Chapter 13 case did Himberger or the Firm receive approval from the Court for any of the fees they claim are earned.

In the instant chapter 7 case, the Firm never disclosed, in its Fed. R. Bankr. P. 2016(b) statement or in the Debtors' schedules or statement of financial affairs, that it held the Retainer or that it was asserting a lien in the Retainer. The only hint that the Firm was treating the $7,500.00 as a retainer is contained in question 9 of the statement of financial affairs, however that is misleading since the question requires disclosure of all property transferred to any attorneys within one year immediately preceding the commencement of the bankruptcy case. This disclosure does not indicate that the Firm is expecting to use the $7,500.00 transferred for

MEMORANDUM  10-01532 TLM

post-petition services. As noted, the word "retainer" does not appear anywhere in the Chapter 7 case, nor is there any hint that the Firm is asserting a lien in any retainer. Given the Court's holdings regarding strict compliance with an attorney's fee disclosure duties, and the experience of the Firm, the kinds of mistakes noted herein should not have been made. Accordingly, disgorgement is an appropriate remedy.

## **CONCLUSION**

For the foregoing reasons, Trustee respectfully requests the Firm turnover and disgorge (1) the $5,701.00 Retainer on hand on the date of filing (2) the $4,700.00 received from Himberger prior to the filing of the instant Chapter 7 case.

Date: August 16, 2010                                          /s/  Jeremy J. Gugino
                                                               Chapter 7 Bankruptcy Trustee

MEMORANDUM  10-01532 TLM

# CERTIFICATE OF SERVICE

I hereby certify that on this date as indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the individuals so noted below. I further certify that, on the same date, I have mailed by United States Postal Service the foregoing document to the following non-EM/ECF Registered Participant(s) either listed below or on an attached list.

*Electronic Notification*

U.S. TRUSTEE
*ECF:* ustp.region18.bs.ecf@usdoj.gov

JEFFREY PHILIP KAUFMAN
1513 TYRELL LANE  STE 130
BOISE, ID 83706

*Served by U.S. MAIL*

/S/  Jeremy J. Gugino
Chapter 7 Bankruptcy Trustee
Date: August 16, 2010