# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                              )
                                                   )        **Case No. 10-01532-TLM**
**RANDALL WADE BLACKBURN**              )
**and LISA ANN BLACKBURN**              )        **Chapter 7**
                                                   )
                               Debtors.            )
_____        )

## MEMORANDUM OF DECISION
_____

Before the Court in this chapter 7[1] case is an Amended Motion for

Turnover filed by the chapter 7 trustee ("Trustee").  Doc. No. 37 ("Motion").

Trustee seeks an order directing Debtors' bankruptcy counsel to turnover or

disgorge a cash retainer received as prepayment for legal services to be rendered

in this case, and to disgorge funds received for services rendered in Debtors' prior

chapter 13 case.[2]

## BACKGROUND AND FACTS

The following facts were drawn from Exhibit Nos. 200–206 admitted by

_____

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy
Code, 11 U.S.C. §§ 101–1532 (the "Code"), and all rule references are to the Federal Rules of
Bankruptcy Procedure 1001–9037.

[2]  The parties have agreed to resolve this matter upon motion, and have waived the need
for an adversary proceeding.  *See* Fed. R. Bankr. P. 7001(2).  Accordingly, the Court treats the
issues raised by Trustee's Motion as contested matters under Fed. R. Bankr. P. 9014, and this
Decision constitutes the Court's findings and conclusions thereon.  Fed. R. Bankr. P. 7052.

agreement at the hearing; a transaction detail attached to the Objection to the

Trustee's Amended Motion, Doc. No. 41, which the parties agreed may be

considered as part of the evidentiary record; and the testimony of Debtor Randall

Blackburn and Debtor's counsel, Jeffrey Kaufman.  In addition, the Court takes

judicial notice of the filings of record in both this case and Debtors' prior chapter

13 case, Case No. 09-03779-TLM.  *See* Fed. R. Evid. 201.

### A.      Chapter 13 Case (Case No. 09-03379-TLM)[3]

In October 2009, Randall and Lisa Blackburn ("Debtors") hired attorney

Richard Himberger of Himberger Law Offices, Chtd. to represent them in a

chapter 13 bankruptcy.  Debtors paid Himberger $7,500 — $2,500 as a flat fee for

handling their bankruptcy case, and $5,000 to be held in trust as prepayment for

legal services incurred, if any, to defend an expected adversary proceeding.[4]  On

November 30, 2009, Debtors filed a voluntary petition for relief under chapter 13,

with the requisite schedules and statement of financial affairs ("SOFA").  In their

SOFA, Debtors disclosed the $7,500 prepetition payment to Himberger as three

separate payments of $2,500, made on October 22, 24, and 27, 2009.  *See* Ex. 200.

Three days later, Himberger filed a statement of compensation with the Court, as

---

[3]  All document references in this subsection A are to the docket in Debtors' prior chapter 13 case, Case No. 09-03779-TLM.

[4]  An adversary proceeding against Debtors was ultimately filed by John and Leslie Carlton, Adv. No. 10-06025-TLM.  That proceeding was later dismissed upon stipulation of the parties when Debtors' chapter 13 case was dismissed.

MEMORANDUM OF DECISION - 2

required by § 329(a) and Rule 2016(b), wherein he disclosed he had received $7,037 for services rendered or to be rendered on Debtors' behalf in connection with the bankruptcy case.  Ex. 201.[5]

Debtors soon became dissatisfied with Himberger's services and began seeking new counsel to represent them in their bankruptcy case.  They contacted and retained the services of the Law Offices of D. Blair Clark PLLC ("Law Firm").  And, on January 29, 2010, Jeffrey Kaufman, one of the Law Firm's attorneys, substituted as counsel of record for Debtors in their chapter 13 case.  *See* Doc. No. 31.  With Debtors' consent and authorization, Kaufman contacted Himberger to obtain any "unearned" portion of the $7,500 prepetition payment Himberger had received from Debtors.  On February 11, Kaufman received a cashier's check from Himberger for $4,700, representing that allegedly unearned portion.  The cashier's check was deposited in the Law Firm's trust account, to be used for payment of fees and costs incurred in representing Debtors.  The Law Firm failed to file a 2016(b) statement in Debtors' chapter 13 case after substituting in as counsel and did not otherwise disclose this payment.[6]

---

[5]  The reason for the $463 difference between Debtors' SOFA and the 2016(b) statement is unclear.  When questioned about the discrepancy at the hearing, Randall Blackburn responded that he did not know why Himberger did not disclose the entire $7,500 in his 2016(b) statement, and that Debtors did in fact pay him $7,500 prior to filing.

[6]  Himberger and the Law Firm lacked the ability to deal with the retainer unilaterally in this fashion.  *See In re For-Rose Plumbing, Inc.*, 99.2 I.B.C.R. 69, 71–72 (Bankr. D. Idaho 1999).

MEMORANDUM OF DECISION - 3

On March 3, the chapter 13 trustee filed a motion to dismiss Debtors' chapter 13 case. Doc. No. 35. In response, on March 12, Debtors filed a chapter 13 plan, Ex. 203, which amended the chapter 13 plan Himberger had filed on Debtors' behalf earlier in the case. The amended plan referenced a $4,700 prepetition fee retainer (presumably the $4,700 the Law Firm received from Himberger) from which Debtors' attorney's fees would be paid as approved by the Court. *See id.*[7]

The motion to dismiss and confirmation of Debtors' amended plan came on for hearing on April 19. Debtors did not oppose the trustee's motion to dismiss, and the Court granted the same. *See* Doc. No. 52. An order dismissing Debtors' chapter 13 case was entered on April 23. Doc. No. 53. And, on June 7, the chapter 13 trustee was discharged and the case was closed. Doc. No. 56.

### B.    Post-Dismissal and Chapter 7 Case (Case No. 10-01532-TLM)[8]

Following the dismissal of Debtors' case, the Law Firm applied the $4,700 it had received from Himberger to the Law Firm's fees incurred in relation to the chapter 13 case. Those fees exhausted the $4,700 and left a remaining unpaid balance of $2,892.50, which the Law Firm eventually wrote off. *See* Doc. No. 41

---

[7] The plan filed by Himberger was silent with respect to the payment of attorney's fees. *See* Ex. 202.

[8] All document references in this subsection B are to the docket in the instant chapter 7 case, Case No. 10-01532-TLM.

MEMORANDUM OF DECISION - 4

at pp. 4–5.

On May 19, less than a month after the chapter 13's dismissal, Debtors filed a voluntary petition for chapter 7 relief. Doc. No. 1. The day before filing the petition, Debtors entered into a "Chapter 7 Fee Agreement" with the Law Firm. Ex. 205 ("Fee Agreement"). The Fee Agreement indicated that Debtors had paid the Law Firm $7,500, to be allocated as follows — $1,500 for prepetition services, $299 for prepetition costs (which consisted of the chapter 7 filing fee), and the remaining $5,701 to be retained in the Law Firm's trust account for post-petition fees and costs, which Debtors and the Law Firm believed would be incurred in defending an anticipated adversary proceeding.[9] The Fee Agreement further granted the Law Firm a "security interest" in the trust account funds.

Kaufman signed, and the Law Firm filed, a 329(a) and Rule 2016(b) statement of compensation with Debtors' chapter 7 petition. Ex. 206 ("2016(b) Statement"). Therein, the Law Firm stated that it had agreed to accept $1,500 for legal services and that it had received $1,500 from Debtors prior to filing the 2016(b) Statement. The Law Firm also represented that it and Debtors had agreed that the $1,500 fee did not include the "[r]epresentation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any

_____

[9] Two adversary proceedings have been filed against Debtors in this case. The first, Adv. No. 10-06065-TLM, was filed by the Carltons, who as noted above had filed a similar proceeding in Debtors' chapter 13 case. The second, Adv. No. 10-06066-TLM, was filed by Chemical Transfer Company, LLC.

MEMORANDUM OF DECISION - 5

other adversary proceeding." *Id.*[10]  The 2016(b) Statement contained no mention

whatsoever of the $5,701 in the Law Firm's trust account.

On June 2, Debtors filed their schedules and SOFA.  Ex. 204.  In their

SOFA, Debtors disclosed the $4,700 Kaufman received from Himberger and the

$7,500 Debtors paid the Law Firm just prior to filing this chapter 7 case, in

addition to disclosing the $7,500 Debtors had paid Himberger before their chapter

13 case.  *See id.*

Trustee now moves for turnover or disgorgement of the $5,701 retainer,

and disgorgement of the $4,700 the Law Firm received from Himberger during

Debtors' chapter 13 case.  The Law Firm and Debtors object.

## DISCUSSION AND DISPOSITION

### A.      Turnover

Trustee first argues that the $5,701 retainer in the Law Firm's account must

be turned over as property of the estate pursuant to § 542.[11]  Specifically, he

--------

[10]  This Court has frequently observed that such exclusionary language for post-
bankruptcy services, at least in regard to lien avoidance and stay lift matters, is presumptively
unreasonable.  The exclusionary language is here unobjectionable and consistent with the express
terms of the Fee Agreement, Ex. 205, only in the sense that the $1,500 fee was solely allocated to
pre-filing work; judicial lien avoidance, contested matters and adversary proceedings *were*,
however, included as "postpetition" services under the Fee Agreement, and covered by the
undisclosed retainer.  *Id.*

[11]  Section 542 provides, in relevant part the following:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than
a custodian, in possession, custody, or control, during the case, of property that the

(continued...)

MEMORANDUM OF DECISION - 6

contends that on the date of filing the right to terminate the Fee Agreement as well as the right to receive any unearned portion of the retainer became property of the estate and that, because he as trustee could exercise the right to terminate the Fee Agreement, he is entitled to the $5,701 portion of the retainer that was unearned on the petition date.

### 1.      The retainer is property of the estate

Commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property as of the date of filing. Section 541(a)(1).  The scope of § 541 is intended to be broad.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983).  Whether a debtor's interest in property is property of the estate is a question of federal law.  *First Fed. Bank of Cal. v. Cogar*, 210 B.R. 803, 809 (9th Cir. BAP 1997).  However, the extent of the debtor's property interests is controlled by state law.  *Butner v. United States*, 440 U.S. 48, 54–55 (1979).

To determine the extent of Debtors' interest in the retainer at the time of

---

[11] (...continued)
trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

MEMORANDUM OF DECISION - 7

filing, and thus the estate's interest, the Court must first determine the nature of

the retainer at issue.  "In general, three types of retainers exist: (1) classic or true

retainers, (2) security retainers, and (3) advance payment retainers." *Rus,*

*Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 736 (9th

Cir. BAP 2006) (citations omitted); *see also In re Dearborn Constr., Inc.*, 03.1

I.B.C.R. 17, 20 & n.15 (Bankr. D. Idaho 2003); 3 Collier on Bankruptcy

¶ 328.02[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

A "security" retainer is one held to secure payment of fees for future

services the attorney is expected to render.  Such funds do not constitute present

payment for future services, but, rather, remain property of the client until the

attorney applies charges for services rendered against the retainer.  Any funds not

earned by the attorney are returned to the client.  *Dick Cepek*, 339 B.R. at 736

(citing 3 Collier on Bankruptcy ¶ 328.02[3][b][i] (15th ed. 2005)).  This Court has

held that security retainers, which are unearned on the petition date, are estate

property.  *Dearborn Constr.*, 03.1 I.B.c.R. at 20 & n.15.

The Law Firm and Debtors have treated the funds at issue as a security

retainer.  Since their receipt, those funds have been held in Debtors' names in the

Law Firm's client trust account.  The Fee Agreement grants the Law Firm a

security interest in the funds and provides that those funds may be applied to post-

petition fees and costs as incurred, on a monthly basis.  Clearly, the yet to be

MEMORANDUM OF DECISION - 8

earned funds were intended to operate as security for payment of the Law Firm's

future claims to compensation.  The Court finds that the $5,701 in funds unearned

on the date of filing constituted a security retainer.  The $5,701 retainer is

therefore estate property as Debtors have and retain an interest in those funds

under applicable nonbankruptcy law.

> **2.**     **The right to terminate the Law Firm is not property of the estate**

Trustee asserts that Debtors' right to discharge the Law Firm, and thus to

trigger return of any unearned retainer, is also property of the estate.  The Court

disagrees.

While the scope of estate property under § 541 is intended to be broad, it is

not without bounds.  Section 541(a)(1) limits estate property to legal and equitable

interests of the debtor *in property*.  Though clearly Debtors' interest in the excess

retainer funds is such an interest, Debtors' right to discharge the Law Firm is not

so easily characterized.  Indeed, Trustee has provided no case authority to support

his position that Debtors' right to terminate the Law Firm's representation should

be characterized as property of the estate.

The relationship between client and attorney is a personal one — one of

trust, confidence, and mutual cooperation.  *See Blough v. Wellman*, 974 P.2d 70,

72 (Idaho 1999).  For this reason a client has the right to discharge an attorney at

any time, with or without cause.  *See* Comment [4] to Idaho Rule of Professional

MEMORANDUM OF DECISION - 9

Conduct 1.16. This right to freely choose and discharge one's attorney is a personal right, rather than a property right, and the Court concludes it is not therefore "property" of the bankruptcy estate. The Court rejects the notion that Trustee could step in and terminate the Law Firm's representation of Debtors in this case. *Cf. In re Brand*, 251 B.R. 912, 914–15 (Bankr. S.D. Fla. 2000) (distinguishing between an elective share interest and the right of election, and finding that the right of election, a personal right under Florida law, was not property of the estate).[12]

Trustee's contention that he may exercise Debtors' right to terminate counsel — which here is but a mechanism he selects to use to recover the retainer in the Law Firm's trust account — is rejected.

### 3.    Turnover of the retainer

Although the Court finds Trustee's argument regarding the right to terminate unpersuasive, it concludes that the retainer funds are nevertheless subject to turnover on other grounds.

Because they are property of the estate, security retainers "can only be used by the professional upon compliance with the entire fee application process

---

[12]   Of course, certain rights may find their way into a chapter 7 estate through § 365, which addresses, among other things, "executory contracts." Trustee has not advanced the argument that the Fee Agreement represents an executory contract, or that rejection of that contract under § 365 would terminate the Law Firm's representation of Debtors. The Court expresses no opinion on such theories.

MEMORANDUM OF DECISION - 10

including court approval." *Dearborn Constr.*, 03.1 I.B.C.R. at 20 (quoting *In re Leypoldt*, 95 I.B.C.R. 220, 226 (Bankr. D. Idaho 1995)); *accord In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 993–95 (Bankr. N.D. Ill. 1990).

> An attorney holding a security retainer is treated as a "secured creditor" with the retained funds remaining property of the estate at all times but subject to the attorney's claims to payment to the extent the Court allows the fees. Court approval of compensation pursuant to § 330 and § 331 is required before the professional may collect fees or reimburse expenses by drawing from the retainer. Since the retainer only secures payment for fees and costs specifically allowed by the Bankruptcy Court, any excess amounts in the retainer are property of the estate subject to turn over.

*Dearborn Constr.*, 03.1 I.B.C.R. at 20 (internal footnote omitted). *Dearborn Construction* considered a retainer that was provided in connection with a chapter 11 case. However, here the security retainer is intended to provide a source of funding for anticipated litigation in a chapter 7 context, where the Debtors' attorney's fees are not subject to the fee application process and Court approval under § 330(a). This raises the issue of whether the security retainer, which constitutes property of the estate, may be used to compensate Debtors' attorneys at all.

It is now established that a debtor's attorney may not recover compensation from the bankruptcy estate for services rendered in a chapter 7 case unless that attorney has been employed by the trustee and such employment approved by the court pursuant to § 327. *Lamie v. United States Trustee*, 540 U.S. 526, 538–39

MEMORANDUM OF DECISION - 11

(2004); *see also Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d

1000, 1010 & n.24 (9th Cir. 2009); *In re Iwasa*, 361 B.R. 162, 165 (Bankr. D.

Idaho 2007).  Less clear is whether a chapter 7 debtor's attorney may recover

compensation earned post-petition from a prepetition security retainer that is

property of the estate.  Two principal arguments have been advanced generally in

support of a debtors' attorney's ability to recover post-petition fees from a

prepetition security retainer in the chapter 7 context, both of which have been

rejected by several courts that have addressed them.  *See generally* 3 Collier on

Bankruptcy ¶ 328.02[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

> **a.      The "retainer exception" does not apply to bar
> turnover**

The first argument is that the Supreme Court's decision in *Lamie*, though

holding that debtors' attorneys could not be compensated from the estate under

§ 330 unless employed by the trustee and approved by the court under § 327,

provided an exception for chapter 7 debtors' attorneys who are paid a reasonable

retainer in advance of filing.  The following language from *Lamie* is identified as

the source of this so-called "retainer exception":

> It appears to be routine for debtors to pay reasonable fees for legal
> services before filing for bankruptcy to ensure compliance with
> statutory requirements.   See generally Collier Compensation,
> Employment of Trustees and Professionals in Bankruptcy Cases
> ¶ 3.02[1], p. 3-2 (2002) ("In the majority of cases, the debtor's counsel
> will accept an individual or a joint consumer chapter 7 case only after
> being paid a retainer that covers the 'standard fee' and the cost of filing

MEMORANDUM OF DECISION - 12

> the petition").  So our interpretation accords with common practice.
> Section 330(a)(1) does not prevent a debtor from engaging counsel
> before a Chapter 7 conversion and paying reasonable compensation in
> advance to ensure that the filing is in order.  Indeed, the Code
> anticipates these arrangements.  See, *e.g.*, § 329 (debtor's attorneys
> must disclose fees they receive from a debtor in the year prior to its
> bankruptcy filing and courts may order excessive payments returned to
> the estate).

540 U.S. at 537–38.

Courts presented with this argument have concluded that the *Lamie* retainer exception applies only to "flat fee" or "advance payment" retainers, and not to security retainers.  *See Redmond v. Lentz & Clark, P.A. (In re Wagers)*, 514 F.3d 1021, 1029–30 (10th Cir. 2007); *Morse v. Ropes & Gray, LLP (In re CK Liquidation Corp.)*, 343 B.R. 376, 383–84 (D. Mass. 2006); *In re Sydmark*, 2008 WL 2520105, at *6 (Bankr. D. Kan. June 20, 2008); *In re Hill*, 355 B.R. 260, 268 (Bankr. D. Or. 2006), *aff'd sub nom. Hill v. Camacho*, 2007 WL 2120891 (D. Or. 2007).  The Court agrees with this conclusion.

Permitting debtors' attorneys not employed under § 327 to draw upon prepetition security retainers for chapter 7 fees would significantly undermine § 330 and the *Lamie* decision.  Security retainers are estate property.  By drawing upon such retainers for chapter 7 services, debtors' attorneys would be receiving compensation from the estate without having been employed under § 327 and their fees approved under § 330 or § 331 — in clear contradiction of the rule articulated in *Lamie*.

MEMORANDUM OF DECISION - 13

On the other hand, "flat fee" or "advance payment" retainers are not property of the estate. Such advance payment retainers belong to the attorney when transferred, though the attorney is still obligated to earn the fees prepaid and refund to the client any unearned portion of the retainer when the attorney's representation ends.[13] *See For-Rose Plumbing*, 99.2 I.B.C.R. at 72 (citing *State ex rel. Moore v. Scroggie*, 704 P.2d 364 (Idaho Ct. App. 1985)); Idaho Rule of Professional Conduct 1.16(d); *see also* 3 Collier on Bankruptcy ¶ 328.02[3][b][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[O]wnership of the [advance payment] retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services."). The estate's interest in an advance payment retainer is limited to the debtor-client's equitable right to an accounting and the refund of any unearned portion of the fee. *See For-Rose Plumbing*, 99.2 I.B.C.R. at 72. Thus, payment of compensation to a chapter 7 debtors' attorney from such a retainer does not run afoul of *Lamie* as the retainer funds are not estate property for which § 330 approval is required. *See CK Liquidation*, 343 B.R. at 383–84 (quoting the petitioner's brief in *Lamie*); *Redmond v. Carson (In re Carson)*, 374 B.R. 247, 249 (10th Cir. BAP 2007).

As noted above, the funds here constitute a security retainer. Therefore,

---

[13]  Of course, in the bankruptcy context, flat fee or advance payment retainers of this sort are also subject to the Court's evaluation for reasonableness under § 329(b), and the Court may order the return of some or all of such retainers if found to be excessive.

MEMORANDUM OF DECISION - 14

*Lamie*'s retainer exception does not apply.

### b.    State lien law does not bar turnover

The second argument is that despite not being employed under § 327, a chapter 7 debtors' attorney may nonetheless recover compensation for post-petition services from a prepetition security retainer if the attorney holds a valid security interest in the retainer under applicable state law.  *See*, *e.g.*, *CK Liquidation*, 343 B.R. at 384.  The Court finds this argument unpersuasive.

The Law Firm asserts a possessory security interest in the retainer funds under the Fee Agreement, which grants "a security interest in and to all balances remaining in [the Law Firm's] trust account in Client's name, perfected by possession."  Ex. 205.  This is consistent with Article 9 of the Idaho Uniform Commercial Code which allows for a possessory security interest in money.  *See* Idaho Code § 28-9-203(b) and 28-9-313; *see also Dick Cepek*, 339 B.R. at 739–40 (finding that under the California UCC an attorney holding a security retainer has a "validly perfected security interest in the funds in his possession") (citing *In re GOCO Realty Fund I*, 151 B.R. 241, 252 (Bankr. N.D. Cal. 1993)); *In re Carolina Premier Medical Group*, P.A., 2001 WL 1699220, at *4 (Bankr. M.D.N.C. Aug. 20, 2001) (security retainer constitutes a security interest in funds under the UCC, perfected by the attorney's possession); *McDonald Bros. Constr.*, 114 B.R. at 999

MEMORANDUM OF DECISION - 15

(same).[14]

However, these authorities involve chapter 11 cases, where the access to

the security is subject to prior judicial review and order under § 330.  Recognition

of an attorney's security interest in retainer funds is problematic in the chapter 7

context.  Because chapter 7 attorneys are not required to seek approval of their

compensation under § 330, it would permit the use of estate property without prior

judicial review — seemingly at odds with the gatekeeping function bestowed upon

bankruptcy courts generally with respect to the use of estate property outside the

ordinary course of business.  *See*, *e.g.*, § 363(b) (requiring notice and a hearing in

order to use, sell, or lease, other than in the ordinary course of business, property

of the estate).  Additionally, applying state lien law to permit payment of post-

petition fees from estate funds without § 327 and § 330 approval would seriously

undermine the *Lamie* decision and the Bankruptcy Code.  *See Sydmark*, 2008 WL

2520105, at *10; *Hill*, 355 B.R. at 268; *CK Liquidation*, 343 B.R. at 384.  As the

court in *Sydmark* noted,

> [W]hen a specific bankruptcy statute has been interpreted by the United

---

[14]  Under Idaho state law an attorney may also hold a common law possessory lien in documents, money or other property obtained in his professional capacity until he receives payment for his professional services, often referred to as a "retaining lien."  *Dearborn Constr.*, 03.1 I.B.C.R. at 19 (quoting *Frazee v. Frazee*, 660 P.2d 928, 929 (Idaho 1983)).  Such a lien is passive and not enforceable by foreclosure and sale, but, rather, provides an attorney some means of coercing a recalcitrant client to make payment.  *Id.*  This Court has previously concluded that, in the bankruptcy context, the assertion of an Idaho attorney's common law possessory lien in funds is subject to the requirement of judicial review and allowance of compensation under § 330 before the funds can be used to pay for the attorney's services.  *Id.* at 21.

MEMORANDUM OF DECISION - 16

> States Supreme Court to prevent payment from the bankruptcy estate
> of debtor's counsel's post-petition attorney fee services, unless that
> counsel is retained by the Trustee to perform services that the Trustee
> deems are likely to benefit the estate or are necessary to the estate's
> administration, state lien law cannot override that statute.

2008 WL 2520105, at *10.  Based on these considerations, the Court concludes

that *Lamie* precludes an attorney from asserting a lien on property of the estate for

post-petition, chapter 7 services where the attorney has not been employed under

§ 327.[15]

The $5,701 in the Law Firm's trust account as of the chapter 7 petition date

is property of the estate.  Under *Lamie* those funds cannot be used to pay the

Debtors' post-filing attorney fees, regardless of whether the Law Firm holds a

security interest in those funds.  Under § 542, the Law Firm must turn the funds

over to Trustee for distribution to creditors.[16]

### B.     Nondisclosure

Trustee next argues that the Law Firm failed to comply with the

compensation disclosure requirements of § 329(a) of the Bankruptcy Code and

Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, both in this chapter 7

---

[15]   This analysis and conclusion applies equally to any common law possessory (or retaining) lien the Law Firm may claim to have under Idaho law.  *See* note 14 *supra*.

[16]   The issues here arise from the decisions of Debtors and the Law Firm (and Himberger previously) to deal with the issues through use of a security retainer.  It is not the role of the Court to explain alternatives for compensation that work better in the chapter 7 or 13 contexts; it is only required to decide here whether a security retainer approach is viable for services yet to be performed in a chapter 7 case.

MEMORANDUM OF DECISION - 17

case and in Debtors' prior chapter 13 case.  As a result, Trustee urges the Court to

sanction the Law Firm by requiring disgorgement of both the $5,701 retainer

received in this case and the $4,700 received for fees incurred in the chapter 13

case.[17]

Section 329(a) of the Code provides:

Any attorney representing a debtor in a case under this title, or in
connection with such a case, whether or not such attorney applies for
compensation under this title, shall file with the court a statement of
compensation paid or agreed to be paid, if such payment or agreement
was made after one year before the date of the filing of the petition, for
services rendered or to be rendered in contemplation of or in
connection with the case by such attorney, and the source of such
compensation.

Rule 2016(b) requires an attorney to file the statement of compensation required

by § 329(a) within 14 days after the order for relief, or at another time as the court

may direct.  That Rule further provides that a supplemental statement of

compensation shall be filed 14 days after any payment or agreement not

previously disclosed.

Disclosure under § 329(a) and Rule 2016(b) is essential in order to facilitate

the Court's ability to monitor the reasonableness of fees and to prevent

overreaching by debtors' attorneys.  *See Law Offices of Nicholas A. Franke v.

Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) ("The Bankruptcy Code

---

[17]   The conclusion reached above on turnover of the retainer makes it unnecessary to
reach this other alleged basis advanced by the Trustee as to the $5,701.  However, because the
issue has been framed by the parties, and because it deals also with the $4,700, the Court will
address it.

MEMORANDUM OF DECISION - 18

contains a number of provisions (e.g., §§ 327, 329, 330, 331) designed to protect

the debtor from the debtor's attorney."); *Neben & Starrett, Inc. v. Chartwell Fin.*

*Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880 (9th Cir. 1995); *see also In re*

*Perrine*, 369 B.R. 571, 579–80 (Bankr. C.D. Cal. 2007).  For this reason the

disclosure requirements under the Code and Rules are not merely aspirations, they

are mandatory.  They impose an independent duty on an attorney to disclose the

precise nature of the fee arrangement with the debtor in a candid and

comprehensive manner.  *See Park-Helena*, 63 F.3d at 881; *Perrine*, 369 B.R. at

580.

The Court enjoys broad discretion in designing appropriate remedies to

deal with violations of § 329(a) and Rule 2016(b).  *See Dearborn Constr.*, 03.1

I.B.C.R. at 23.  Attorneys who fail to comply with the disclosure requirements may

be subject to denial or disgorgement of fees.  *See*, *e.g.*, *Lewis*, 113 F.3d at

1045–46; *Park-Helena*, 63 F.3d at 882; *In re Larson*, 04.1 I.B.C.R. 15, 16 (Bankr.

D. Idaho 2004) ("[A]ny failure to comply with [§ 329 and Rule 2016] is given a

serious view by the Court, and may subject the attorney to severe sanctions,

including the loss of an attorney's fees earned in a case, disgorgement of any fees

paid, or even monetary sanctions.") (citation omitted).  The authority to deny or

disgorge any and all compensation when an attorney fails to meet the requirements

of these provisions is derived from the Court's inherent authority over the

MEMORANDUM OF DECISION - 19

compensation of debtors' attorneys. *See Lewis*, 113 F.3d at 1045.[18]

The disclosure rules are to be applied literally, even if the results are at times harsh. *See Park-Helena*, 63 F.3d at 881. "Because the integrity of the bankruptcy system is at stake, it is absolutely essential that the Court not simply 'excuse' counsel when compliance falls short of that required by the Code and Rules." *Combe Farms*, 257 B.R. at 53–54. Indeed, "[e]ven negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees," and a disclosure violation may result in sanctions "regardless of actual harm to the estate." *Park-Helena*, 63 F.3d at 881–82 (citing and quoting *In re Maui 14K, Ltd.*, 133 B.R. 657, 660 (Bankr. D. Haw. 1991)).

### 1.    Chapter 13 case

Trustee asserts that the Law Firm failed to adequately comply with the disclosure requirements of 329(a) and Rule 2016(b) in Debtors' chapter 13 case because it never filed a Rule 2016(b) disclosure at all.

While the Court acknowledges that such disclosure is required when attorneys, such as the Law Firm, substitute into a case, *see* Rule 2016(b) (requiring disclosure initially, and again within 14 days of any payment or agreement not

---

[18]  While both *Park-Helena* and *Lewis* also involved failures to disclose under § 327, *see* 63 F.3d at 881–82 and 113 F.3d at 1044–45, respectively, a Code section not implicated in this chapter 7 case, violations of § 329(a) and Rule 2016(b) alone constitute sufficient grounds for the reduction, denial or disgorgement of compensation to a debtor's attorney. *See Perrine*, 369 B.R. at 586–87 (ordering disgorgement and denial of compensation to debtor's attorney in a chapter 7 case based on the attorney's failure to comply with § 329(a) and Rule 2016(b)); *see also Larson*, 04.1 I.B.C.R. at 16; *In re Combe Farms, Inc.*, 257 B.R. 48, 52–53 (Bankr. D. Idaho 2001).

MEMORANDUM OF DECISION - 20

previously disclosed), it would be inappropriate for the Court to entertain — in this chapter 7 case — a request based on conduct that occurred in Debtors' prior chapter 13 case.[19]  The proper forum for seeking such sanctions is in the chapter 13 case.[20]

### 2.      Chapter 7 case

Trustee also contends that the Law Firm failed to satisfy the requirements of § 329(a) and Rule 2016(b) in the instant chapter 7 case by not disclosing the security retainer funds in its trust account at the time of filing.  Although the Court finds that the $5,701 security retainer is subject to turnover under § 542, *supra*, it will consider Trustee's disgorgement argument with respect to those funds in order to address the Law Firm's apparent misconception regarding an attorney's

---

[19]  It is only happenstance that both Debtors' chapter 13 case and their chapter 7 case were assigned to the same judge.  The problem with the approach taken by Trustee — *i.e.*, moving for sanctions in this case for disclosure failures in the chapter 13 case — would have been even more apparent had one of Debtors' cases been assigned to another judge.  *See In re Larson*, 04.1 I.B.C.R. 15, 15 n.1 (Bankr. D. Idaho 2004), and *In re Larson*, 04.1 I.B.C.R. 20, 22 n.24 (Bankr. D. Idaho 2004) (decisions by two judges of this Court addressing disclosure failures committed by an attorney representing the same debtor in two separate bankruptcy cases, in which each judge strictly limited the analysis to the attorney's actions or inactions in the case before him).

[20]  Trustee has not articulated a theory to support his invocation, as a chapter 7 trustee in a separate case, of § 329(a) and Rule 2016(b) in a prior, now dismissed chapter 13 case.  Presumptively, such a theory would have to be derivative of Debtors' rights, because a remedy for violations of § 329(a) and Rule 2016(b) is the return or disgorgement of fees to the estate or the debtor.  *See Larson*, 04.1 I.B.C.R. at 17.  (If payable to the chapter 13 estate, Debtors still here obtained the funds by reason of the dismissal.  *See* § 349(b)(3) and § 1326(a)(2)).  In addition to a host of issues the present attack would seemingly raise is one related to Debtors' post-dismissal conduct; *i.e.*, Debtors agreed to application by the Law Firm of the $4,700 toward the cost of representation in the chapter 13.  How the Code and Rules lead to the $4,700 being now recoverable by Debtors' subsequent chapter 7 trustee is not clear.

MEMORANDUM OF DECISION - 21

disclosure duties under § 329(a) and Rule 2016(b).

The 2016(b) Statement filed by the Law Firm in this chapter 7 case, Ex. 201, does not comply with the requirements of § 329(a).  That section requires that any attorney representing a debtor in a bankruptcy case, or in connection with a bankruptcy case, file a statement of the compensation paid, or agreed to be paid, to the attorney in the one-year period prior to filing the petition.  In its 2016(b) Statement, the Law Firm disclosed only the $1,500 received for pre-chapter 7 petition work.  The Law Firm made no mention of the remaining $5,701 Debtors paid as a security retainer for anticipated adversary representation.  Nor did it disclose the arrangement (*i.e.*, the Fee Agreement) entered into by the Law Firm and Debtors under which Debtors agreed to pay $150 per hour for future services. Disclosure of these facts were clearly required under § 329(a).  *See Park-Helena*, 63 F.3d at 881 (§ 329(a) mandates that an attorney disclose "the precise nature of the fee arrangement").

At the hearing, Kaufman stated that he did not disclose the $5,701 retainer and Fee Agreement based on his reading and understanding of the 2016(b) disclosure form, Procedural Form B203.[21]  Specifically, he testified that he understood the form to require only disclosure of payments received for services

---

[21]  The information required by § 329(a) and Rule 2016(b) is generally provided for on Procedural Form B203.  Use of the Procedural Forms is encouraged, though, unlike the Official Forms, not required.  *See* Fed. R. Bankr. P. 9009.  The Law Firm's Rule 2016(b) disclosure in this chapter 7 case, Ex. 201, was on such a form.

MEMORANDUM OF DECISION - 22

rendered, or to be rendered, in the bankruptcy *case*, but not disclosure of payments

received for services to be rendered in the anticipated *adversary proceeding*.

However, this argument is contradicted by the express language of the Fee

Agreement, Ex. 205.  That Agreement included a number of case-related services,

in addition to adversary proceedings, as covered by the $5,701 retainer.  *Id.* ¶¶ 5,

6, 8 & 9.[22]

Even if the retainer were limited to adversary representation, the Law

Firm's analysis of the 2016(b) disclosure form and its duty under § 329(a) is

flawed.  Section 329(a) clearly and unambiguously requires the disclosure of

compensation paid or agreed to be paid for services rendered *or to be rendered* by

an attorney representing a debtor in a bankruptcy case, or *in connection with a*

*bankruptcy case*.  This language, which is also incorporated into the 2016(b)

disclosure form, is sufficiently broad to include payments for services to be

rendered in a potential — and here expressly anticipated — adversary proceeding.

Such a proceeding would, of course, have a "connection with" the bankruptcy

case.  It could not exist without it.

The Law Firm's decision to limit disclosure to compensation paid for

services rendered in the prepetition preparation of the chapter 7 petition and in the

---

[22]  The Fee Agreement is also inconsistent with the Rule 2016(b) Statement in that the former limits application of the $1,500 to "prepetition" services, *see* Ex. 205, while the latter indicates the $1,500 also covers certain post-petition services as well, *see* Ex. 206 ¶ 5.d.

MEMORANDUM OF DECISION - 23

main bankruptcy case was an erroneous one.  The Law Firm was obligated under

§ 329(a) to disclose *all* compensation paid or *agreed to be paid* in Debtors'

bankruptcy case or *in connection with* that case.

      The Law Firm's non-disclosure in this case was significant.  It deprived the

Court of information essential to its ability to evaluate the nature and amount of

compensation paid or promised to be paid to the Law Firm by Debtors for legal

services.  Though no evidence was presented to show the Law Firm had actual

intent to conceal this information from the Court, the failure to disclose had such

an effect.[23]

      The state of the law is clear — an attorney who neglects to meet the

disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently,

forfeits the right to receive compensation for services rendered and may be

ordered to return fees already received.  *See Combe Farms*, 257 B.R. at 53 & n.9

(citing *In re Basham*, 208 B.R. 926, 931 (9th Cir. BAP 1997), *aff'd sub nom. In re*

*Bryne*, 152 F.3d 924 (9th Cir. 1998)).  And the Court cannot simply "excuse"

blatant failures to comply with the disclosure requirements of the Code and Rules.

*See id.* at 53–54.  However, the Court has already determined that the Law Firm

must turn over its $5,701 retainer to Trustee on other grounds.  Therefore, based

on the specific facts and circumstances here, it concludes that no additional

---

[23]  The SOFA disclosure, *see* Ex. 204, militates against a finding of such an intent,
though it does not remedy or excuse the Rule 2016(b) failures.

MEMORANDUM OF DECISION - 24

sanction against the Law Firm is required.

**CONCLUSION**

Based on the foregoing, the Court will grant Trustee's Motion in part and deny it in part. The Law Firm must turn over the $5,701 security retainer to Trustee. Trustee's request for disgorgement of the $4,700 in legal fees collected by the Law Firm for work performed in Debtors' prior chapter 13 case will be denied. The Court shall enter an order consistent with this Decision.

DATED: January 26, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 25